IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

CLARA GILLIS,

               Plaintiff,

                                     No. 03:11-cv-01520-HZ

                                     OPINION & ORDER

     v.

WAL-MART STORES INC., et al,

               Defendants.

Carl Lee Post
Daniel J. Snyder
Cynthia J. Gaddis
LAW OFFICES OF DANIEL SNYDER
1000 S.W. Broadway, Suite 2400
Portland, OR 97205

      Attorneys for Plaintiffs

Richard R. Meneghello

1 - OPINION & ORDER

Laura P. Jordan
FISHER & PHILLIPS, LLP
111 S.W. Fifth Avenue
Suite 4040
Portland, OR 97204

HERNANDEZ, District Judge:

In April 2009, Clara Gillis began working as a Cashier for Wal-Mart at its
Lancaster Drive store in Salem, Oregon ("Lancaster Drive Wal-Mart"). In October 2009,
Gillis filed a complaint with Wal-Mart about her co-worker Edward Soto, stating that she
felt threatened by Soto after he had showed her and her husband his gun collection at his
house and had commented that from his apartment he could shoot them with a sniper
rifle. After filing her complaint about Soto, Gillis was offered and accepted a job at Wal-
Mart's Commercial Street store in Salem, Oregon ("Commercial Street Wal-Mart"),
where she worked as a Sales Associate making twenty cents less per hour. On November
26, 2009, while working at the Commercial Street Wal-Mart, Gillis was assaulted by a
developmentally disabled man, Kiayan Li, who touched and grabbed Gillis and then
walked off.

In December 2009, Gillis became pregnant and requested intermittent leave under
the Family Medical Leave Act ("FMLA"). Although Gillis was not an eligible employee
under FMLA, Wal-Mart granted Gillis intermittent FMLA leave. Gillis later requested
continuous FMLA leave, which Wal-Mart also granted. Gillis subsequently made
additional requests for leave, all of which Wal-Mart granted. Upon returning from leave
in December 2010, Gillis was terminated pursuant to Wal-Mart's no call/no show policy
after she failed to show up to work on three consecutive workdays and failed to call in
her absences beforehand.

Gillis brings the following claims: (1) violations of FMLA; (2) violations of OFLA; (3) violations of Oregon's whistleblower statute ORS 659A.199; (4) violations of Oregon's whistleblower statute ORS 659A.230; (5) violations of Title VII of the Civil Rights Act of 1964 based on gender; (6) violations of ORS 659A.030 and 659A.129 based on gender; and (7) violations of ORS 659A.290 for discrimination and retaliation based on being a victim of sexual assault.

Now before me is Wal-Mart's Motion for Summary Judgment (doc. #32) as to all of Gillis's claims.  For the reasons that follow, Wal-Mart's motion is GRANTED in part and DENIED in part.

## BACKGROUND

On April 15, 2009, Gillis began working at the Lancaster Drive Wal-Mart as a Cashier where she made $9.50 per hour.  Gillis Decl., Ex. 1, p. 1.  In September 2009, Gillis applied for a Customer Service Manager ("CSM") position at the Lancaster Drive Wal-Mart, but was not selected for an interview.

That same month, September 2009, Gillis states that Soto began harassing her on a daily basis by interrupting her while she was helping customers.  Jordan Decl., Ex. 1, pp. 15-16, 28.  Gillis also states that she would always catch Soto staring at her.  Id.  In October 2009, Soto moved into the same apartment complex where Gillis and her husband lived.  Id., pp. 13-14.  At some point in October 2009, Soto went over to Gillis's apartment and asked Gillis and her husband if they would like to "see his other house".  Id., p. 4.  After accepting Soto's invitation, the group went to Soto's house where according to Gillis, Soto showed them his collection of guns and a "fake Oregon license".  Id., p. 18.  On their way back from Soto's house, Soto picked up a pizza, and they all

returned to Gillis's apartment.  Id., p. 33.  Upon leaving Gillis's apartment, Soto

commented that he could "easily pick [Gillis and her husband] off with a sniper rifle".

Francis Decl., ¶ 6.  It was from that day that Gillis states she "started feeling threatened

[and] afraid" of Soto.  Jordan Decl., Ex. 1, p. 24.

      Gillis and her husband moved out of their apartment complex on October 19,

2009.  Id., p. 36.  On October 19, 2009, Gillis and her husband also went to the Salem

police station and filed a report about Soto's gun collection and his comment about being

able to "pick them off with a sniper rifle".  Id., p. 30.  The police report states that Gillis

and her husband were "frightened to return back to their residence, and [were] . . . staying

with their parents while they look[ed] for a new place to live."  Gillis Decl., Ex. 3, p. 2.

The report, however, also states that although Soto had "started to [go] over [to Gillis and

her husband's place] on a regular basis", neither Gillis nor her husband ever "told [Soto]

they wanted [his] contact to cease" and "never asked him to leave their residence."  Id.

      In October 2009, after making the report about Soto to the Salem police, Gillis

told Wal-Mart's management that Soto had been "bothering [her] . . . at [work]", "kept

interrupting [her at work]", and "was basically making it hard to work" and that Soto

unlawfully possessed "weapons and [a] fake ID".  Jordan Decl., Ex. 1, pp. 29-30.  Gillis

also provided Wal-Mart with the following letter dated October 19, 2009, which states:

> This statement from Clara M Gillis Because [sic] of Ed he works in [the
> truck department] and has made some threatening words and let himself
> into my home showed me weapons of his and move in next door and I feel
> threatened and verry [sic] afraid. The thret [sic] he made "from my house
> its [sic] a perfect sniper shot if you step out."

Gillis Decl., Ex. 4, p. 1.

4 - OPINION & ORDER

Gillis alleges that she was "in tears and crying" when she reported Soto's conduct to Wal-Mart's management, and that management decided that Gillis needed to be transferred. Jordan Decl., Ex. 1, pp. 41-44. According to Gillis, it was "basically get transferred, quit, or get fired." Id., p. 44. Gillis states that after telling Wal-Mart's managers about Soto, Wal-Mart's managers "took [her] to another room where they had computers and had [her] check through all of the open jobs that were available within the surrounding area", one of which included a Sales Associate position in the Toys department at the Commercial Street Wal-Mart. Gillis Decl., ¶ 10; Jordan Decl., Ex. 1, pp. 41-42.

On October 24, 2009, Gillis was offered the Sales Associate position in the Toys department of the Commercial Street Wal-Mart. Gillis Decl., Ex. 7, p. 1. Gillis accepted the job offer. Id. Although Gillis states that she did not initially know that the Sales Associate position paid less than the Cashier position she had previously held at the Lancaster Drive Wal-Mart, she learned that the Sales Associate position was a "lower status . . . and had a lower pay grade [of $9.30 per hour]" after she started working at the Commercial Street Wal-Mart. Jordan Decl., Ex. 4; Gillis Decl., ¶ 13. Gillis states that her transfer to the Commercial Street Wal-Mart also resulted in her not working for a few days before starting her new position. Id. Gillis further states that she had a miscarriage on the last day she worked at the Lancaster Drive Wal-Mart. Jordan Decl., Ex. 1, pp. 96-97.

On November 26, 2009, while working at the Commercial Street Wal-Mart, Gillis was assaulted by Li. The day following the assault, Gillis spoke with a police officer about the incident with Li and filed a report with Wal-Mart. In her report to Wal-Mart

dated November 27, 2009, Gillis states that Li "was grabing [sic] [her] chest, buttox [sic], [and] vagina" and threw Gillis "up agienst [sic] a wall. . . and . . . then just stoped [sic]" and walked off.  Id., p. 60; Jordan Decl., Ex. 5, p. 1.

In December 2009, Gillis again became pregnant.  Jordan Decl., Ex. 1, p. 105.  In January 2010, Gillis applied for a CSM position at the Commercial Street Wal-Mart.  Id. Of the sixty applicants who applied for the position, two woman–Gillis and Catrina Vann–and one male–Bree Duffy–were selected for interviews.  Bales Decl., ¶ 3.  Vann, who had nearly two years of Cashier experience and prior CSM training, was ultimately selected for the CSM position.  Id., ¶ 4.

On January 16, 2010, Gillis requested intermittent FMLA medical leave from January 16, 2010, to June 16, 2010 because she was experiencing "really bad morning sickness" which was lasting "all day".  Jordan Decl., Ex. 1, p. 105; Gillis Decl. Ex. 13; Id., Ex. 14, p. 1.  Gillis's healthcare provider certified that Gillis was eligible for leave and Wal-Mart approved Gillis's request for leave.  Id.  Although Gillis was not entitled to FMLA leave, Wal-Mart designated Gillis's leave as FMLA leave. Id.

After missing nine shifts between January 17, 2010, and January 31, 2010, Gillis states that Wal-Mart told her that she "needed to take a six-month leave of absence or else it could lead to termination."  Jordan Decl., Ex. 1, p. 108; Ford Decl., Ex. 1, p. 12. The record shows that Gillis requested continuous FMLA leave and provided Wal-Mart with a certification from her healthcare provider stating that she needed continuous leave because she would "be incapacitated for a single continuous period of time due to . . . her medical condition" between February 3, 2010, and August 2, 2010.  Gillis Decl., Ex. 15, pp. 1-2; Ford Decl., Ex. 2, pp. 8-9.  On February 15, 2010, Wal-Mart approved Gillis's

request for continuous leave and again designated her leave as FMLA leave even though she was not an eligible employee under FMLA.  Ford Decl., Ex. 2, pp. 1-11.  While on leave, Gillis wrote a letter to her Store Manager, Rich Cummins, stating that she felt that she was being treated unfairly because she was "a woman" and because she took medical leave.  Gillis Decl., Ex. 18, p. 1.

Although Gillis was scheduled to return to work on August 2, 2010, it is undisputed that she did not return to work on that date or timely request additional leave.  Ford Decl., ¶ 5; Id., Ex. 3, pp. 1-4.  Rather, the undisputed evidence shows that on August 26, 2010, Gillis requested continuous FMLA leave from August 3, 2010, to October 22, 2010, submitting a certification from her healthcare provider stating that Gillis needed continuous leave because she would be "TOTALLY DISABLED 8/3/10 THRU 10/22/10" and would "be incapacitated for a single continuous period of time due to . . . her medical condition" between August 3, 2010, to October 22, 2010.  Ford Decl., ¶ 6; Id., Ex. 3, pp. 5, 8-9.  The record shows that Wal-Mart approved Gillis's request for continuous leave and designated such leave as FMLA leave.  Ford Decl., ¶ 6; Id., Ex. 3, p. 5.

Although Gillis was scheduled to return to work on October 22, 2010, it is undisputed that she again did not return to work as scheduled or contact Wal-Mart before the expiration of her leave.  Rather, the record shows that Gillis called Wal-Mart on October 27, 2010, and requested leave until February 3, 2011, submitting a certification from her healthcare provider stating she would "be incapacitated for a single continuous period of time due to . . . her medical condition" from September 10, 2010, "thru 6 weeks

post partum, maternity leave thru 12 weeks." Ford Decl., Ex. 4, pp. 1-3, 7.  The record

further shows that Wal-Mart approved Gillis's request for leave.  Id., pp. 3-4.

At the end of November 2010, Gillis contacted Wal-Mart and requested to return

to work early.  Jordan Decl., Ex. 1, p. 122.  Before returning to work, Gillis also

expressed to Wal-Mart that she was interested in a Cashier position.  Id.  On November

30, 2010, Gillis returned to work as a Sales Associate in the Toy department, but soon

after was offered and accepted a job offer for a Cashier position on December 9, 2010,

which resulted in her pay increasing from $9.30 per hour to $9.50 per hour.  Ford Decl., ¶

8; Id., Ex. 5, p. 1.

In mid-December of 2010, Gillis states she had a panic attack when she saw

someone who reminded her of Soto on a computer-based training video.  Jordan Decl.,

Ex. 1, pp. 152-53.  Gillis states that in the following days, she had more panic attacks and

simply stopped going to work and stopped calling in her absences.  Id., pp. 155-56.  Wal-

Mart's "[n]o call/no show" policy states, in pertinent part, that "[i]f you are absent for

three workdays (consecutive or non-consecutive) in a rolling six-month period and do not

report your absences by calling the Associate Information Line, [Wal-Mart] will consider

you to have abandoned your job, which will result in your voluntary termination of

employment."  Ford Decl., Ex. 6, p. 2.  On December 28, 2010, Gillis received a letter

from Wal-Mart stating that she had been terminated after she had been absent for three

scheduled work shifts in a row and failed to report her absences.[1]  Gaddis Decl., Ex. 5, p.

1; Jordan Decl., ¶ 35; Id., Ex. 7, p. 1; Id., Ex. 27, p. 1.

---

[1] Gillis states that although she was terminated by Wal-Mart, she sent two resignation
letters to Wal-Mart on December 27, 2010, and December 29, 2010.

## STANDARD

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. E.g., Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party need only demonstrate that there is an absence of evidence to support the non-moving party's case.  Id. at 325.

Once the moving party has met its burden, the burden shifts to the non-moving party to "set out 'specific facts showing a genuine issue for trial.'"  Id. at 324 (quotation omitted).  To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor.  Id. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment ."  Id.  However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact

and defeat summary judgment.  See Thornhill Publ'n Co., Inc. v. GTE Corp., 594 F.2d

730, 738 (9th Cir. 1979).

## DISCUSSION

### I. First and Second Claims: Violations of FMLA and OFLA

FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the

exercise of or the attempt to exercise, any right provided under [FMLA.]"  29 U.S.C. §

2615(a)(1).  "The FMLA implementing regulations prohibit an employer from interfering

with an employee's rights under the Act by 'us[ing] the taking of FMLA leave as a

negative factor in employment actions.'"  Russell v. Mountain Park Health Ctr. Props.,

LLC, 403 Fed. Appx. 195, 196 (9th Cir. 2010) (quoting 29 C.F.R. § 825.220(c)).  The

Ninth Circuit has previously "declined to apply the type of burden shifting framework

recognized in McDonnell Douglas to FMLA interference claims; rather, [an employee]

can prove this claim, as one might any ordinary statutory claim, by using either direct or

circumstantial evidence, or both."  Sanders v. City of Newport, 657 F.3d 772, 778 (9th

Cir. 2011) (quotation marks and citations omitted).  The Oregon legislature has directed

that OFLA be "construed to the extent possible in a manner that is consistent with any

similar provisions" under FMLA.[2]  ORS 659A.186(2).

### A. First Claim: FMLA Interference

Wal-Mart argues that Gillis's first claim alleging FMLA interference fails because

she was not an eligible employee entitled to FMLA leave.  Employees are eligible for

FMLA leave if they have been employed by a covered employer "for at least 12 months

by the employer" and "for at least 1,250 hours of service with such employer during the

---

[2] Plaintiff concedes that OFLA is to be construed in the same manner as FMLA.

10 - OPINION & ORDER

previous 12-month period." 29 U.S.C. § 2611(2)(A); <u>Sullivan v. Dollar Tree Stores, Inc.</u>,

623 F.3d 770, 780 (9th Cir. 2010) ("[A]n employee is not eligible for family or medical

leave until he or she has worked for an employer for 12 months."). Wal-Mart presents

evidence showing that Gillis was not eligible for FMLA leave because she lacked the

requisite months and hours to qualify as an eligible employee under FMLA. Gillis does

not dispute that she was ineligible for FMLA leave and does not present evidence

showing that she had the requisite months or hours to qualify as an eligible employee

under FMLA. Because Gillis fails to show that she was entitled to FMLA leave, her

FMLA interference claim fails.

     Gillis, however, argues that Wal-Mart should be equitably estopped from arguing

that she was ineligible for FMLA leave because Wal-Mart represented that she was

eligible for FMLA leave and she reasonably relied on Wal-Mart's representation to her

detriment. Gillis argues that Wal-Mart's representation was detrimental because "[Wal-

Mart] forced her to take a block of leave instead of intermittent leave", which she asserts

prevented her from making money she otherwise would have made had she worked

intermittently.

     I am not persuaded by Gillis's argument and conclude that Gillis provides no

basis to invoke the doctrine of equitable estoppel under the circumstances here. Gillis

presents no evidence showing that, despite her need and desire to do so, she could have

continued to work intermittently during her pregnancy, especially where her own

healthcare provider stated that she needed continuous leave because she was

"incapacitated". In addition, Gillis provides no authority establishing that the lost

opportunity of making money she may have otherwise made had she worked

intermittently is a protected right under FMLA.  Further, the record shows that Gillis

requested continuous leave and in fact received all of her requested leave, which totaled

over ten months–more than that to which she would have otherwise been entitled had she

been eligible for FMLA leave.  Under these circumstances, I simply cannot conclude that

Gillis's reliance on Wal-Mart's representation was detrimental or that invoking the

doctrine of equitable estoppel here would avoid injustice.  See Heckler v. Comty. Health

Servs. of Crawford Cnty., Inc., 467 U.S. 51, 59 (1984) (stating equitable estoppel is an

"equitable doctrine invoked to avoid injustice").  Accordingly, Wal-Mart's motion for

summary judgment as to Gillis's first claim for relief is granted.

### B. Second Claim: OFLA Interference

The interference provision of OFLA makes it unlawful for an employer to "[d]eny

family leave to which an eligible employee is entitled under [OFLA]."  ORS

659A.183(1).  Wal-Mart concedes that pursuant to ORS 659A.159 and ORS 659A.162,

Gillis was entitled to combined OFLA leave totaling twenty-four weeks.  Wal-Mart,

however, argues that Gillis's claim fails because Wal-Mart granted all of her requests for

leave.  Gillis responds that Wal-Mart's motion for summary judgment as to her OFLA

interference claim should not be granted because there remains a dispute of fact as to

whether Wal-Mart forced her to use a continuous six-month block of leave instead of

intermittent OFLA leave.  Like the above, Gillis asserts that Wal-Mart unlawfully

interfered with her OFLA rights by preventing her from making money she otherwise

would have made had she continued to use intermittent leave.  In support of her

argument, Gillis relies heavily on Liu v. Amway Corp., 347 F.3d 1125 (9th Cir. 2003).

I disagree with Gillis. As stated above, Gillis presents no evidence showing that, despite her need and desire to do so, she could have continued to work intermittently during her pregnancy–especially where own healthcare provider stated that she needed to take continuous leave because she was "incapacitated". Gillis also provides no authority establishing that the lost opportunity of making money is a protected right under OFLA. In addition, the record shows that Gillis not only requested continuous leave, but also received all of her requested leave, which totaled over ten months–more than she was entitled to under OFLA. Under the facts here, I cannot conclude that there is a triable issue of fact as to whether Wal-Mart unlawfully interfered with Gillis's OFLA rights.

It is also worth stating that Liu also does not support Gillis's arguments. In Liu, 347 F.3d at 1135, plaintiff's employer mischaracterized plaintiff's leave as personal leave instead of FMLA leave. Because of that mischaracterization, defendant mistakenly believed that it had discretion to deny–and in fact repeatedly denied–plaintiff's requests for extensions of leave. Id. at 1134-35.

Contrary to Liu, here Gillis received all of her requested leave. Equally as important is the fact that Liu did not involve a situation where an employee was switched from intermittent leave to continuous leave, as here. Suffice it to say, the Ninth Circuit in Liu was not presented with the issue of whether an employer unlawfully interferes with an employee's right to use intermittent leave when as here, the employee herself requests continuous leave, submits documentation from her healthcare provider stating that she needs continuous leave because she is "incapacitated", and receives all of her requested leave. Simply put, Liu does not support Gillis's position that Wal-Mart unlawfully interfered with her OFLA rights in this instance.

13 - OPINION & ORDER

In sum, no reasonable juror could conclude that under the circumstances here, Wal-Mart interfered with OFLA's rights. Wal-Mart's motion for summary judgment as to Gillis's second claim for relief is granted.[3]

## II. Fifth and Sixth Claims: Title VII and ORS 659A.030 Gender Discrimination

Gillis's fifth and sixth claims allege violations based on "gender, sex, and pregnancy" in violation of her rights under Title VII and ORS 659A.030. Compl., ¶¶ 91, 97. The factual allegations in Gillis's fifth and sixth claims mirror each other, except that her fifth claim alleges violations of Title VII whereas her sixth claim alleges violations of ORS 659A.030.

"In order to assert a valid Title VII claim for sex discrimination, a plaintiff must make out a prima facie case establishing that the challenged employment action was either intentionally discriminatory or that it had a discriminatory effect on the basis of gender." Jespersen v. Harrah's Operating Co., 444 F.3d 1104, 1109-10 (9th Cir. 2006) (citation omitted). Employers are prohibited from disparately treating employees based on sex, which incorporates disparate treatment on the basis of pregnancy, childbirth, and related medical conditions or occurrences. 42 U.S.C. § 2000e(k); 42 U.S.C. § 2000e-2(a). To establish a prima facie case of sex discrimination, a plaintiff must establish that "(1) she belongs to a protected class, (2) she was performing according to her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) other employees with qualifications similar to her own were treated more favorably." Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1220 (9th Cir. 1998) (citation omitted). Once

---

[3] Plaintiff concedes that she does not allege unlawful retaliation for using FMLA or OFLA leave. Resp., p. 14. Accordingly, Wal-Mart's motion for summary judgment as to Gillis's claims that Wal-Mart unlawfully retaliated against her for using FMLA and OFLA leave is granted.

plaintiff establishes her prima facie case, "the burden then shift[s] to the defendant to articulate nondiscriminatory reasons for the allegedly discriminatory conduct." Id.  "The employer's articulation of a facially nondiscriminatory reason shifts the burden back to the plaintiff to show that the employer's reason was a pretext for discrimination." Id.

### A. Gender Discrimination

#### 1. CSM Positions and Transfer

Wal-Mart seeks summary judgment against Gillis's claims that her non-selection for the CSM positions at the Lancaster Drive Wal-Mart in September 2009 and the Commercial Street Wal-Mart in January 2010 and her transfer to the Commercial Street Wal-Mart in October 2009 were based on her pregnancy.  Wal-Mart argues that the managers who declined to hire Gillis for the CSM positions or who were involved with her transfer did not know Gillis was even pregnant.  The evidence on which Wal-Mart relies supports Wal-Mart's argument that none of the hiring managers knew Gillis was pregnant when they decided not to hire her for the CSM positions or when transferring her to the Commercial Street Wal-Mart.  Plaintiff does not respond in any way to Wal-Mart's arguments.  Accordingly, Wal-Mart's motion for summary judgment as to Gillis's claims alleging gender discrimination based on her pregnancy when she was not hired for the CSM positions and when she was transferred to the Commercial Street Wal-Mart is granted.

#### 2. "Forced" Leave

Wal-Mart seeks summary judgment as to Gillis's claim alleging that she was forced to take continuous leave instead of intermittent leave based on her pregnancy. Wal-Mart argues that there is no evidence showing Gillis was forced to take continuous

leave.  In support of its argument, Wal-Mart proffers evidence showing that Gillis herself requested continuous leave, submitted documentation to Wal-Mart showing that her own healthcare provider stated she needed continuous leave, and had missed a number of shifts while on intermittent leave.  Ford Decl., ¶¶ 3-8; Id., Ex. 1, pp. 8-12; Id., Ex. 3, pp. 8-11; Id., Ex. 4, pp. 3-7; Jordan Decl., Ex. 2, pp. 57-60.  Gillis does not respond to Wal-Mart's argument and axiomatically, proffers no evidence creating a genuine issue of material fact as to whether she was disparately treated when Wal-Mart granted her requests for continuous leave.  Accordingly, Wal-Mart's motion for summary judgment as to Gillis's claim alleging gender discrimination when she was switched from intermittent leave to continuous leave is granted.

### 3. Plaintiff's December 2010 Termination

Wal-Mart seeks summary judgment on Gillis's claim that her termination was based on gender.  Wal-Mart contends that there is no evidence showing that it acted with a discriminatory motive when it terminated Gillis in December 2010.  In support of its argument, Wal-Mart presents evidence showing that it granted all of Gillis's requests for leave.  Ford Decl., ¶¶ 1-6.  In addition, Wal-Mart presents evidence showing that soon after returning from her leave in December 2010, Gillis was offered and accepted a Cashier position, which resulted in a pay increase from $9.30 to $9.50.  Id., Ex. 5, pp. 1-2.  Finally, Wal-Mart proffers evidence showing that Gillis was ultimately terminated because she failed to show up to work on three consecutive workdays without reporting her absences to Wal-Mart.  Jordan Decl., Ex. 1, pp. 155-160.

Again, Gillis makes does not respond and proffers no evidence in response to Wal-Mart's arguments. Accordingly, Wal-Mart's motion for summary judgment against Gillis's claim that her termination was unlawfully based on gender is granted.

### B. Similarly Situated Employees

Wal-Mart also maintains that Gillis's disparate treatment claims fail because there is no evidence showing that similarly situated employees were treated more favorably with respect to hiring CSMs, use of continuous leave, or termination. In support of its argument, Wal-Mart presents evidence showing that a female was ultimately hired for the CSM position at the Commercial Street Wal-Mart in January 2010. Bales Decl., ¶¶ 3-4. Wal-Mart also contends that the record is devoid of any evidence showing that male employees were treated more favorably with respect to the use of intermittent leave or termination. Because Gillis does not respond in any way to Wal-Mart's arguments, she fails to create a genuine issue of material fact as to whether Wal-Mart discriminated against her in terms of hiring, use of continuous leave, or termination. Accordingly, Wal-Mart's motion for summary judgment as to Gillis's claims that her non-selection for the CSM positions, use of continuous leave, and termination was unlawfully based on her gender is granted.

### C. Hostile Work Environment

Gillis does argue that she was subject to a hostile environment based on sexual harassment. "[S]exual harassment in the form of a hostile work environment constitutes sex discrimination." Nichols v. Azteca Rest. Enters., Inc., 256 F.3d 864, 871 (9th Cir. 2001) (citations omitted). "To prevail on his hostile environment claim, [a plaintiff is] required to establish a pattern of ongoing and persistent harassment severe enough to

alter the conditions of employment." Id.  To satisfy this requirement, plaintiff is required

to prove that her workplace was "both objectively and subjectively offensive, one that a

reasonable person would find hostile or abusive, and one that the victim in fact did

perceive to be so."  Id. at 871-72 (citation omitted); Dawson v. Entek Int'l, 630 F.3d 928,

938 (9th Cir. 2011) (citation omitted).

 "[W]hether an environment is 'hostile' or 'abusive' can be determined only by

looking at all the circumstances.  These may include the frequency of the discriminatory

conduct; its severity; whether it is physically threatening or humiliating, or a mere

offensive utterance; and whether it unreasonably interferes with an employee's work

performance."  Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993).  "[S]imple teasing,

offhand comments, and isolated incidents (unless extremely serious) will not amount to

discriminatory changes in the terms and conditions of employment."  Faragher v. City of

Boca Raton, 524 U.S. 775, 788 (1998) (citations and internal quotation marks omitted).

 The employee must also show that the harassment was "because of sex." E.g.,

Nichols, 256 F.3d at 872 (citations omitted).  Workplace harassment "is [not]

automatically discrimination because of sex merely because the words used have sexual

content or connotations."  Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80

(1998).  Where an employee is allegedly harassed by co-workers, the employer may be

liable if it knows or should know of the harassment but fails to take steps "reasonably

calculated to end the harassment."  Nichols, 256 F.3d at 875 (internal quotation marks

omitted).

 Gillis does not specifically point to evidence directly supporting her hostile work

environment sexual harassment claim.  Rather, she simply asserts that Wal-Mart's motion

18 - OPINION & ORDER

for summary judgment as to her gender discrimination claims should be denied because as the co-worker in <u>Ellison v. Brady</u>, 924 F.2d 872, 880 (9th Cir. 1991), Soto showed Gillis his house, pestered her with questions and hung around her work area, showed a "romantic/sexual interest" in her, and harassed her during and outside of work.  Resp., p. 20.  Plaintiff further asserts that like <u>Ellison</u>, there remains a genuine issue of material fact as to whether defendant properly disciplined Soto.

Gillis's arguments miss the mark.  The severity of sexual harassment in <u>Ellison</u> was much greater than the alleged sexual harassment here.  In <u>Ellison</u>, 924 F.2d at 873-74, the co-worker not only "pester[ed] [plaintiff] with unnecessary questions and h[u]ng around her desk", he also "uncharacteristically dressed in a three-piece suit" one day and asked plaintiff out for lunch.  In addition, the co-worker in <u>Ellison</u>, 924 F.2d at 874 also wrote plaintiff multiple notes, one stating that he had "cried over [plaintiff one] . . . night and . . . [was] totally drained" and another stating that he felt plaintiff was "worth knowing with or without sex", that he had "enjoyed [plaintiff] so much over the[] past few months . . . [w]atching [her]. . [and] . . . [e]xperiencing [her] from O [sic] so far away."

Unlike <u>Ellison</u>, here Soto did not write Gillis any letters, let alone write her any letters that were sexual in nature.  In addition, the incidents on which Gillis relies were too isolated and not sufficiently pervasive or severe so as to alter the conditions of Gillis's work environment within the meaning of a hostile environment sexual harassment claim.  For example, the evidence here simply shows that Soto would interrupt her while she "was checking someone out through the checkout line" or when she was "talking to [an]other person".  Jordan Decl., Ex. 1, pp. 15-16, 20; Francis Decl.,

p. 2.  The evidence also shows that Soto only talked to Gillis about "regular daily things, like the weather".  Jordan Decl., Ex. 1, pp. 15-16, 20; Francis Decl., p. 2.  Indeed, the undisputed facts show that Soto stopped "interrupting [Gillis] while [she was] checking someone out at the cash register" the "day [she] complained to management about his behavior."  Jordan Decl., Ex. 1, p. 17.  Gillis's own perception that Soto had a "romantic/sexual interest" and that she would "always catch him staring at [her]", by themselves, are simply insufficient to create a triable issue of fact as to whether Soto's conduct was objectively offensive.

Additionally, many of the events on which Gillis relies occurred outside of the work setting.  For example, the incidents where Soto once showed Gillis and her husband his gun collection after they had voluntarily gone over to his house, once commented that he could shoot them with a sniper rifle from his apartment, and had moved into her same apartment complex at one point are completely unrelated to Gillis's workplace.  Even if they were somehow related to Gillis's workplace, the conduct on which Gillis relies is simply too isolated in time and insufficiently pervasive or severe to have polluted Gillis's workplace or alter the conditions of her employment within the meaning of a sexual hostile work environment claim.

In sum, Gillis fails to create a genuine issue of material fact as to whether Soto's conduct was severe or pervasive enough to alter the conditions of her employment.  Wal-Mart's motion for summary judgment as to Gillis's hostile environment sexual harassment claim is granted.

/ / /

/ / /

### III. Fifth and Sixth Claims: Title VII and ORS 659A.030 Retaliation

To establish a prima facie case of Title VII retaliation, a plaintiff must establish that "(1) she engaged in a protected activity . . . , (2) [defendant] subjected her to an adverse employment action, and (3) a causal link exists between the protected activity and the adverse action." Manatt v. Bank of Am., NA, 339 F.3d 792, 800 (9th Cir. 2003) (citation and internal quotation marks omitted).  Once plaintiff "has asserted the prima facie retaliation claim, the burden shifts to [defendant] to articulate a legitimate, non-discriminatory reason for the adverse employment action.  If [defendant] articulates such a reason, [plaintiff] bears the ultimate burden of demonstrating that the reason was merely a pretext for a discriminatory motive." Id.  Retaliation claims brought under ORS 659A.030 are analyzed in the same manner as those brought under Title VII, including application of the burden-shifting framework of McDonnell Douglas.  Dawson, 630 F.3d at 935.

Wal-Mart contends that Gillis's fifth and sixth claims alleging retaliation under Title VII and ORS 659A.030 fail because her November 2009 letter complaining about how Wal-Mart handled the attack by Li does not constitute protected activity, Gillis cannot establish a causal connection between her protected activity and her termination, and Wal-Mart has a legitimate, non-retaliatory reason for its actions.  Because Gillis does not respond to Wal-Mart's arguments, Wal-Mart's motion for summary judgment as to Gillis's claims based on these allegations is granted.

Gillis, however, does argue that that she establishes a prima facie case of retaliation for opposing "gender discrimination".  Resp., p. 21.  Gillis argues that she meets the first element of her retaliation claim when she made a hostile work

environment claim regarding Soto.  Gillis asserts that she meets the second element of her retaliation claim because Wal-Mart took action against her by escorting her to a computer to initiate her transfer from the Lancaster Drive Wal-Mart.  Gillis further asserts that her transfer from the Lancaster Drive Wal-Mart adversely affected her because it resulted in her working at a lower-level position that reduced her hourly wage from $9.50 to $9.30 per hour.  Finally, Gillis contends that she satisfies the third element of her retaliation claim because her transfer from the Lancaster Drive Wal-Mart was a direct result of her reporting a hostile work environment about Soto.

Wal-Mart replies that Gillis's transfer from the Lancaster Drive Wal-Mart does not constitute an adverse action because Gillis was not forced to transfer.  Wal-Mart contends that it was Gillis who requested a transfer out of the Lancaster Drive Wal-Mart because she was unwilling to work at the same store as Soto.  Wal-Mart maintains that Gillis herself logged into Wal-Mart's computer system and selected the Wal-Mart stores to which she wanted to transfer and the positions she was willing to accept.  Wal-Mart also argues that Gillis's transfer was voluntary because she voluntarily accepted the lower-paying Sales Associate position after it was offered to her.  Finally, Wal-Mart asserts that Gillis's retaliation claim fails because she does not refute Wal-Mart's legitimate, non-discriminatory reason for transferring Gillis.

Viewing all the evidence in the light most favorable to Gillis, I conclude there is a genuine issue of material fact as to whether Gillis's transfer to the Commercial Street Wal-Mart in October 2009 was in retaliation for her hostile work environment claim about Soto.  Here, Gillis states that her transfer to the Commercial Street Wal-Mart was involuntary because Wal-Mart's managers "decided . . .  [plaintiff] should be transferred"

and took her into a room with computers where they had her "check through all of the open jobs that were available within the surrounding area." Jordan Decl., Ex. 1, pp. 41-42. Gillis also states that although she "did not want to transfer", management told her that "was really her only option". Id., p. 44. This evidence creates a triable issue of fact as to whether Gillis's transfer to the Commercial Street Wal-Mart was in fact voluntary.

In addition, Wal-Mart's assertion that it provides a legitimate, non-discriminatory reason for transferring Gillis to the Commercial Street Wal-Mart lacks merit. Although Wal-Mart specifically proffers reasons as to why Gillis was not ultimately hired for the CSM positions and why Gillis was ultimately terminated, Wal-Mart does not specifically articulate a reason–let alone specifically articulate a legitimate, non-discriminatory reason–as to why Gillis was transferred after she made a hostile work environment claim about Soto.

In sum, Wal-Mart's motion for summary judgment as to Gillis's claims alleging Title VII and ORS 659A.030 retaliation and discrimination are granted in part and denied in part. Wal-Mart's motion is denied to the extent that Gillis alleges violations of Title VII and ORS 659A.030 retaliation based on her report of a hostile work environment about Soto and her subsequent transfer to the Commercial Street Wal-Mart.

## IV. Third and Fourth Claims: Whistleblower Retaliation

Gillis's third and fourth claims allege whistleblower retaliation in violation of ORS 659A.199 and 659A.230.

### A. McDonnell Douglas Burden-Shifting Analysis

As a threshold issue, Gillis contends that the McDonnell Douglas burden-shifting analysis does not apply to her whistleblower retaliation claims and accordingly, she need

only set forth a prima facie case of retaliation to survive summary judgment.  In support

of her position, Gillis cites <u>Ryan v. Patterson Dental Supply, Inc.</u>, 2000 WL 640859, No.

CV-98-1177-ST, CV-98-1177-HA (D. Or. 2000) and <u>Dawson</u>, 630 F.3d at 935.

      Gillis's arguments are unpersuasive.  In <u>Ryan</u>, 2000 WL 640859, No. CV-98-

1177-ST, CV-98-1177-HA at *37, although Judge Haggerty concluded that "Magistrate

Judge Stewart erred by engaging in [the <u>McDonnell Douglas</u>] federal law burden-

shifting", he did not provide any reason or authority supporting his decision.  Moreover,

as Wal-Mart correctly points out, in a more recent decision Judge Haggerty specifically

recognized that a "burden-shifting analysis applies to retaliation claims" under ORS

659A.199.  <u>Merrill v. M.I.T.C.H. Charter School Tigard</u>, 2011 WL 1457461, Civil No.

10-219-HA, at *7 (D. Or. 2011) (citation omitted).  Consistent with <u>Merrill</u>, other cases

within this district have also applied the <u>McDonnell Douglas</u> burden-shifting analysis to

whistleblowing claims brought under ORS 659A.199 and 659A.230.  <u>See</u> <u>Neighorn v.</u>

<u>Quest Health Care</u>, 870 F. Supp. 2d 1069, 1104-05 (D. Or. 2012) (considering

defendant's a legitimate, non-retaliatory reason for terminating plaintiff with regard to

plaintiff's whistleblowing claim under ORS 659A.199); <u>see also</u> <u>Larmanger v. Kaiser</u>

<u>Found. Health Plan of the Nw.</u>, 2012 WL 3921777, No. 3:11-CV-00089-BR at *16 (D.

Or. 2012) (stating that if plaintiff establishes a prima facie case of retaliation under ORS

659A.199 and 659A.230, "the burden shifts to the defendant to rebut the inference of

retaliation by offering a legitimate, nondiscriminatory reason for the employee's

termination").

      With respect to <u>Dawson</u>, 630 F.3d at 932, Gillis contends that because the Ninth

Circuit did not mention whether the <u>McDonnell Douglas</u> burden-shifting framework also

applied to whistleblower retaliation claims when stating that "the burden-shifting framework applies to all of [plaintiff's] federal and state discrimination claims", it necessarily follows that the <u>McDonnell Douglas</u> burden-shifting framework does not apply to retaliation claims.  Resp., p. 14.  A careful reading of <u>Dawson</u>, however, does not support such a conclusion.  In <u>Dawson</u>, plaintiff brought claims under ORS 659A.030, not whistleblower retaliation under ORS 659A.199 and ORS 659A.230 as here.  Accordingly, the Ninth Circuit's silence as to whether the <u>McDonnell Douglas</u> burden-shifting analysis applies to whistleblower retaliation claims under ORS 659A.199 and ORS 659A.230 does not support Gillis's position because that issue was simply not before the Ninth Circuit.

Because recent decisions within this district have repeatedly applied the <u>McDonnell Douglas</u> burden-shifting analysis to whistleblowing claims brought under ORS 659A.199 and 659A.230 and because Gillis points to no binding authority stating otherwise, I conclude that the <u>McDonnell Douglas</u> burden-shifting analysis applies.

### B. Whistleblower Retaliation Under ORS 659A.199 and 659A.230

ORS 659A.199(1) provides as follows:

> It is an unlawful employment practice for an employer to discharge, demote, suspend or in any manner discriminate or retaliate against an employee with regard to promotion, compensation or other terms, conditions or privileges of employment for the reason that the employee has in good faith reported information that the employee believes is evidence of a violation of a state or federal law, rule or regulation.

ORS 659A.230(1) provides:

> It is an unlawful employment practice for an employer to discharge, demote, suspend or in any manner discriminate or retaliate against an employee with regard to promotion, compensation or other terms, conditions or privileges of employment for the reason that the employee has in good faith reported criminal activity by any person, has in good

faith caused a complainant's information or complaint to be filed against any person, has in good faith cooperated with any law enforcement agency conducting a criminal investigation, has in good faith brought a civil proceeding against an employer or has testified in good faith at a civil proceeding or criminal trial.

To establish a prima facie case of retaliation under ORS 659A.199 and 659A.230, a plaintiff "must show 1) that she was engaging in a protected activity, 2) that she suffered an adverse employment decision, and 3) that there was a causal link between the protected activity and the adverse employment decision." E.g., Ruggles v. Cal. Polytechnic State Univ., 797 F.2d 782, 785 (9th Cir.1986); Shultz v. Multnomah Cnty., No. 08-CV-886-BR, 2009 WL 1476689, at *13 (D. Or. 2009) (same). If the plaintiff establishes a prima facie case, the burden shifts to the defendant to rebut the inference of retaliation by offering a legitimate, nondiscriminatory reason for the employee's termination. If the defendant successfully rebuts the inference of retaliation, the burden of production shifts back to the plaintiff to show that the defendant's explanation is merely a pretext for impermissible retaliation. See, e.g., Neighorn, 870 F. Supp. 2d at 1101-02.

### 1. Non-Selection for CSM Positions and Termination

Wal-Mart argues that Gillis's claims of whistleblower retaliation under ORS 659A.199 and 659A.230 fail because she cannot establish a causal connection between her reports regarding Li and Soto and her non-selection for the CSM positions and her termination. Because Gillis does not respond to Wal-Mart's arguments, Wal-Mart's motion for summary judgment as to Gillis's claims of retaliation based on her reports of Li and Soto and her non-selection for the CSM positions and her termination is granted. / / /

**2. Transfer to the Commercial Street Wal-Mart**

Gillis argues that she was retaliated against in violation of ORS 659A.199 and

659A.230 when she was transferred to the Commercial Street Wal-Mart.  Gillis contends

she meets the first elements of ORS 659A.199 and 659A.230 when she made a good faith

report about Soto's conduct and his illegal possession of guns and a fake Oregon license.

Gillis contends that she meets the second elements of ORS 659A.199 and 659A.230

when she was transferred to the Commercial Street Wal-Mart to a lower-level position,

which paid her twenty cents less per hour.  Plaintiff contends that because she presents

facts showing that an assistant manager stood behind her and gave her instructions while

she selected alternative positions at other Wal-Mart locations and because she felt that a

transfer from the Lancaster Drive Wal-Mart was her only option, there remains a genuine

dispute of material fact as to whether she was in fact forced to transfer.

Wal-Mart argues that Gillis's whistleblower retaliation claims fail because Gillis

voluntarily accepted the transfer to the Commercial Street Wal-Mart store.  Wal-Mart

also contends that Gillis's whistleblower retaliation claims fail because she offers no

evidence showing that Wal-Mart's reason for transferring her to the Commercial Street

Wal-Mart store was pretext.

For the same reasons discussed above, I conclude there exists a genuine issue of

material fact as to whether Gillis's transfer to the Commercial Street Wal-Mart was

voluntary.  The temporal proximity of Gillis's transfer and her report about Soto creates a

triable issue of fact as to whether there was a causal link between her report regarding

Soto and her subsequent transfer.  As discussed above, although Wal-Mart specifically

articulates reasons as to why Gillis was not selected for the CSM positions and why she

was terminated, Wal-Mart does not specifically articulate a legitimate, non-discriminatory reason as to why Gillis was transferred after she made a hostile work environment claim about Soto.

In sum, Wal-Mart's motion for summary judgment as to Gillis's third and fourth claims are granted in part and denied in part.  Wal-Mart's motion is denied to the extent that Gillis alleges whistleblower retaliation in violation of ORS 659A.199 and 659A.230 when she was transferred to the Commercial Street Wal-Mart following her report about Soto.

**V. Seventh Claim: Violations of ORS 659A.290**

Gillis's seventh and final claim alleges Wal-Mart discriminated against her for being the victim of sexual assault and stalking in violation of ORS 659A.290.  ORS 659A.290(2)(b) makes it unlawful for an employer to "[d]ischarge, threaten to discharge, demote, suspend or in any manner discriminate or retaliate against an individual with regard to promotion, compensation or other terms, conditions or privileges of employment because the individual is a victim of domestic violence, harassment, sexual assault or stalking."  Courts within this district have yet to address or even cite ORS 659A.290.  Both parties, however, agree that to establish a violation under ORS 659A.290, Gillis must show that (1) she was a victim of sexual assault or stalking; (2) she suffered an adverse employment action; and (3) there exists a causal connection between plaintiff's sexual assault or stalking and the adverse employment action.

Wal-Mart contends that Gillis cannot establish a causal connection between Soto's alleged stalking or the incident with Li and her not being selected for any of the CSM positions for which she applied.  Gillis does not respond to Wal-Mart's arguments.

Accordingly, Wal-Mart's motion for summary judgment as to Gillis's claim alleging violations of ORS 659A.290 based on her non-selection for the CSM positions is granted.

Gillis argues that she makes a prima facie case of discrimination where she was transferred to a lower position making twenty cents less per hour immediately after she reported that she was the victim of stalking by Soto. Wal-Mart replies that Gillis's argument lacks merit because Gillis cannot show that her transfer to the Commercial Street Wal-Mart was pretext.

I disagree with Wal-Mart's arguments. Even if I were to conclude that the McDonnell Douglas burden-shifting framework applied to ORS 659A.290 claims, Wal-Mart does not specifically articulate a legitimate, non-discriminatory reason as to why Gillis was transferred after she reported that Soto was stalking her. Instead, Wal-Mart only proffers reasons explaining why Gillis was not hired as a CSM and why she was ultimately terminated. Reply, pp. 13-14.

In light of the above, Wal-Mart's motion for summary judgment as to Gillis's seventh claim is granted in part and denied in part. Wal-Mart's motion is denied to the extent that Gillis claims she was unlawfully discriminated against when she was transferred to the Commercial Street Wal-Mart after reporting that she was a victim of stalking by Soto.

/ / /

/ / /

/ / /

/ / /

/ / /

29 - OPINION & ORDER

**CONCLUSION**

Consistent with this Opinion & Order, Wal-Mart's motion for summary judgment

(doc. #32) is GRANTED in part and DENIED in part.

IT IS SO ORDERED.

Dated this ___15___ day of ___Apr___, 2013.

MARCO A. HERNANDEZ
United States District Judge